# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

———————

Case No. 0:14-cv-62707-DPG  (Fort Lauderdale Division)

———————

MICHAEL RUSS and on behalf of those similarly situated,

Plaintiffs,

*vs*.

HOME DEPOT U.S.A., INC.

Defendant.

## MOTION FOR CONDITIONAL CERTIFICATION

For the Plaintiff and Class:

*Dale James Morgado, Esq.*

MORGADO, P.A.
228 Park Ave S.
Suite 84164
New York, New York 10003
T: 855-899-9121
F: 855-499-9191
E: djm@morgado.us

*R. Edward Rosenberg, Esq.*

MORGADO, P.A.
100 N. Biscayne Blvd.,
Suite 2902
Miami, Florida 33132
T: 855-899-9121
F: 855-499-9191
E: rer@morgado.us

# ISSUE BEFORE THE COURT

In resolving this Motion for Conditional Certification, the Court needs to answer one principal issue, all else being peripheral:

## Should Other Department Supervisors Be Notified About This Case?

- The law says conditional certification is granted when there is (1) desire to join (2) are the purported class is similarly situated with regard to job requirements and pay provisions.[1]

- Here, the Plaintiff and four more employees have opted-in expressing their desire to join.  All five are similarly situated in pay, overtime, job duties, and harm.  They were all department supervisors, all paid by the hour, all worked overtime, all worked off-the-clock, and all injured when the Defendant failed to pay them for all the work they performed.

- Given this, should other potential plaintiffs receive  "accurate and timely notice," allowing them to "make an informed decisions about whether to participate"?[2]

---

[1] *Aguirre v. Aventura's Finest Hand Car Wash at Gulfstream Park, Inc.*, 2014 U.S. Dist. LEXIS 101728 *4 (S.D. Fla. July 25, 2014)
[2] *Id.*

# FACTUAL SUMMARY

## 1.   Procedural Posture: Ready for Certification.

Plaintiff, Michael Russ, worked for Home Depot in Ft. Myers and Fort Lauderdale.  He sued Home Depot on December 1, 2014, for violating the Fair Labor Standards Act.[3]  He claims Department Supervisors are not paid for all the hours they work.  He says those in his position are regularly answering questions from co-workers, resolving issues and coordinating work while off-the-clock.

Four Department Supervisors have opted-in this action, *i.e.*, Raffeal Parker of Texas, Sean Barrett of California, Ken Andrews of Wisconsin, and Daniel Aldridge of Nevada.  Like Russ, they too were not paid for work performed off-the-clock.[4]

These Department Supervisors claim they are similarly situated because they were paid hourly, had similar job duties, and experienced the same common practice and harm, to wit: that the job does do not end when they clock out. Indeed, they all worked off-the-clock, regularly answering questions, resolving issues, and coordinating work.

---

[3] D.E. 1
[4] D.E.'s 5 (Opt-In of Daniel Aldridge), 6 (Opt-in of Kenneth Andrews), 7 (Opt-In of Raffael Parker), and 8 (Opt-in of Sean Barrett)

## 2. Home Depot's 13+ Department Tiered Workforce

Home Depot sells home improvement products nationwide.[5]  It is the world's largest home improvement retailer,[6] with over 300,000 employees and 1,977 stores.[7]  It employs approximately 26,400 Department Supervisors, and each store employs as many as 400 people.[8]

Its workforce is tiered, with each store having a Store Manager and up to seven Assistant Store Managers.[9]  Below managers are usually thirteen Retail Department Supervisors (sometimes called Department Heads), to wit: Lumber, Building Materials, Flooring, Paint, Hardware, Plumbing, Electrical, Garden, Kitchen & Bath, Millwork, Pro-Desk, Tool Rental and Decor. At the bottom are Associates.[10] Like Associates, Department Supervisors are paid hourly.[11]

---

[5] *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 287 (E.D.N.Y. 2010)

[6] Ex. 1 - Home Depot Corporate Fact Sheet.

[7] Ex. 1 - Home Depot Corporate Fact Sheet.  *See also, Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 287 (E.D.N.Y. 2010); *Clougher v. Home Depot USA*, Case No. 2:06-cv-05474, D.E. 53-5 (Home Depot's Statement of Material Facts, citing to Declaration of Nicole Smith)

[8] *Clougher v. Home Depot USA*, Case No. 2:06-cv-05474, D.E. 53-5 (Home Depot's Statement of Material Facts, citing to Declaration of Nicole Smith)

[9] *See Arthur A. Amash, et. al. v. Home Depot U.S.A., Inc.*, Case No. 1:12-cv-837 (NDNY), citing to Home Depot's Statement of Facts at 25-28.  *See, also Clougher v. Home Depot USA*, Case No. 2:06-cv-05474, D.E. 53-5, parg. 5 (Home Depot's Statement of Material Facts, citing to Declaration of Nicole Smith)

[10] Ex. 2, ¶ 3 - Joint Statement of Material Facts in *Harold Smalley et. al. v. Home Depot USA, Inc.*, Case No. 3:11-cv-02951, D.E. 76-12, (N.D. Cali. Jan. 4, 2012).

[11] *See Smalley v. Home Depot U.S.A., Inc.*, 2013 U.S. Dist. LEXIS 49744, 3-4 (N.D. Cal. Apr. 5, 2013); *also Arthur A. Amash, et. al. v. Home Depot U.S.A., Inc.*, Case No. 1:12-cv-837 (NDNY), citing to Home Depot's Statement of Facts at 25-28.  *See, also Clougher v. Home Depot USA*, Case No. 2:06-cv-05474, D.E. 53-5, parg. 5 (Home Depot's Statement of Material Facts, citing to Declaration of Nicole Smith)

Home Depot treats these departments and their supervisors the same. Regardless of department or store, each department supervisor is expected to perform and be responsible in the same way.[12]  Home Depot even advertises for these positions en masse, not bothering to be specific about the hiring needs of department supervisors in individual stores.[13]

### 3.  Department Supervisors answer questions -- all the time.

Often described as the "link" between management and staff, the Department Supervisor's job includes coordination, coverage, and answering questions.[14]  The result is regular communication with customers, vendors, managers and associates alike.  This "link" is described by Home Depot as "the department supervisor manages selling and operational departments, and is responsible for coaching, developing, and directing the work of associates within their department and other departments as needed."[15]  Further, "Department Supervisors are accountable for direct supervision of the work activities of

---

[12] Exhibits 3 and 8 - Collection of several Department Supervisor job postings, both internally and from 3rd party websites, respectfully.
[13] Exhibits 3 and 8 - Multiple Home Depot job descriptions in various states for "Department Supervisor" state that "departments may include Building Materials, Decor, Electrical, Flooring, Gardening, Hardware, Kitchen & Bath, Lumbar, millwork, Paint, Plumbing, Pro Account Sales, Tool Rental, Front End, Freight, Receiving, Associate Support, Special Services, and Merchandising Execution."
[14] Exhibit 6 - Plaintiff Sworn Declarations ("job duties of a Department Supervisor call for one to be the link between management, associates, customers, and vendors").
[15] Exhibit 7 - HD-RUSS-0001819 - Associate Orientation 2013

subordinates, which requires planning, monitoring and review of work" according to their universal job description advertised on various job posting websites nationwide.[16]

It does not matter if the Department Supervisor is off-the-clock. This is because they must be in a constant ready-to-work state. And, "according to its Regional Human Resource Director, Home Depot requires that its Department Supervisors 'be available to work a fully flexible schedule according to the needs of Home Depot's business.'"[17]

This constant state of work theme is echoed in Home Depot's published job materials throughout the world, explaining that the "Job's Purpose" is for you [the Department Supervisor] to work "a flexible schedule, requiring both daytime and evening availability."[18] In fact, the company has even "prevented" employees from serving as Department Supervisors before because their schedules were "not sufficiently flexible."[19] Simply stated: Home Depot tells its workforce it must be able to work off-the-clock.

---

[16] Exhibits 3 and 8 - Just a small sampling shows this description in Georgia, Minnesota, Illinois, Arizona, Florida, Missouri, South Carolina, Kentucky, Tennessee, Wisconsin and Alabama.
[17] *Halfacre v. Home Depot,* No. 04-2483, 2005 WL 2114060, at *1 (W.D. Tenn. Aug. 26, 2005)
[18] Exhibit 5 - 2013 Online Job Description for Department Supervisor Job
[19] *Halacre v. Home Depot*, 2:04-cv-2483, D.E. 25, pg. 4 (Order Granting Home Depot's Motion for Summary Judgement)

## LAW & ANALYSIS

29 U.S.C. 216(b) allows a private civil action on behalf of a group of similarly situated employees.  The purpose of a collective action is to allow "plaintiffs the advantage of lower individual costs to vindicate rights by pooling of resources," explained the Supreme Court in *Hoffmann-La Roche, Inc. v. Sperling*.[20]

Here, the Plaintiffs asks for permission to notify potential opt-ins of their rights to join this action, so they may receive "accurate and timely notice," allowing them to "make an informed decisions about whether to participate."[21]

They ask for conditional certification because (1) they have demonstrated others "desire" to opt-in to this action, and (2) Department Supervisors are similarly situated with "regard to their job requirements and pay provisions."[22]

## 4.  There Are Others Who Wish to Join

Russ needs only show by a "reasonable basis" that others wish to join this

---

[20] 493 U.S. 165, 170 (1989). This efficiency is a core part of the FLSA § 216(b) collective action purpose. *Hoffman*, 493 U.S. at 170 ("judicial system benefits by efficient resolution in one proceeding of common issues of law and fact"). *See also*, *Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d 718, 725 (11th Cir. 1987) (concluding that separate actions by each of the proposed class members would be repetitive and wasteful, and would burden the courts).

[21] *Aguirre v. Aventura's Finest Hand Car Wash at Gulfstream Park, Inc.*, 2014 U.S. Dist. LEXIS 101728 *4 (S.D. Fla. July 25, 2014)

[22] *Aguirre v. Aventura's Finest Hand Car Wash at Gulfstream Park, Inc.*, 2014 U.S. Dist. LEXIS 101728 *4 (S.D. Fla. July 25, 2014)

case. This burden is not difficult, and the existence of one opt-in can suffice.[23]

Here, four opt-ins have already joined.[24] With five people already in this case,

Russ has shown that other employees desire to opt-in -- at least for limited

purposes of a conditional certification.

## 5.  Similarly Situated - a Flexible and Relaxed Standard.

Having shown more than a speculative interest in joining the case, Russ says

that the proposed class of Department Supervisors are "similarly situated" as to

"job requirements and pay provisions" as well.  This burden is met because they

routinely work more than forty hours per week, are paid by the hour, but not for

all the hours they worked.[25]

Indeed, even here, his burden is "not heavy," and may be met by making

class-wide allegations supported by affidavits.[26]  It is a light burden explained the

Eleventh Circuit in *Anderson v. Cagle's, Inc*., particularly during stage one, in the

---

[23] *Aguirre* at *6 (this Court finding one opt-in raised the contention beyond one of "pure speculation" and finding that plaintiff met this burden for stage one conditional certification). *See also,  Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1283 (S.D. Fla. 2012) (just one co-worker who desires to join is likely to be sufficient) *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 U.S. Dist. LEXIS 58484, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006).(same)
[24] D.E.'s 5 (Opt-In of Daniel Aldridge), 6 (Opt-in of Kenneth Andrews), 7 (Opt-In of Raffael Parker), and 8 (Opt-in of Sean Barrett)
[25] Ex. 6 - Plaintiff Declarations
[26]  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. Ga. 1996)

two-stage analysis suggested by our circuit court.[27]  Even more, the court does not consider defenses at this stage.[28]  That is done during final certification. In fact, "a unified policy, plan, or scheme of discrimination may not even be required to satisfy the more liberal 'similarly situated' requirement of Sec. 216(b)."[29]

## 6.  Department Supervisors Answer Questions, Resolve Issues and Coordinate Work.

The Court will find Department Supervisors are similarly situated now and at stage two. They are all:

- similarly underpaid;[30]

- similarly worked more than 40 hours in a workweek;[31]

- similarly worked off-the-clock;[32]

---

[27] *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)(citing *Hipp*, 252 F.3d at 1217-19); see also *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003)

[28] *Krueger v. New York Tel. Co.*, 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058 at *2 (S.D.N.Y. July 21, 1993) ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.") The merits of the claims "need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated." *Realite,* 7 F. Supp.2d at 308; *Ingram v. Coach USA, Inc.,*2008 U.S. Dist. LEXIS 5935 at *16 (D.N.J. 2008) (quoting *Aquilino v. The Home Depot,* 2006 U.S. Dist. LEXIS 66084 at *2 (D.N.J. Sept. 7, 2006)).

[29] *79 F.3d at 1095.*

[30] Each has explained they should be part of this Class because they were not paid for all the hours they worked. *See* Ex. 6 (Fifth Bullet Point)

[31] *Id.*

[32] *See* Ex. 6 (Seventh and Eight Bullet Points)

●  similarly paid by the hour;[33] and

●  similarly experienced the same type of job duties, as they each
   explained in their sworn declarations:

"As a Department Supervisor you are the person that is go between
these groups, and as a result, I would regularly be contacted at home
or when I was off-the-clock.  This was not something I experienced
only, it was part of the job.  Simply put, the job did not end when I
clocked out."[34]

*See also*, Ex. 3 and 8 (Identical Job Descriptions from Various Parts of
the Country)

## 7.  Home Depot's Common Practice: You must be "flexible" *aka* work off-the-clock.

The reasons Department Supervisors are similarly underpaid, and similarly
called to work off-the-clock, is because they are similarly victim to the same
policy, to wit: "be flexible" - a Home Depot policy which means be ready to work
at any moment, and do whatever is necessary to get the job done, including
working off the clock.[35]

In practice, however, this policy translates into the common harm of having
underreported working hours, regularly taking calls, answering questions,
coordinating work, and resolving issues off-the-clock. This policy and practice

---

[33] Ex. 6 - Plaintiff Declarations (Fifth Bullet Point)
[34] Ex. 6 - Plaintiff's Declarations (Sixth Bullet Point)
[35] Ex. 6 - Plaintiff's Declarations (Seventh and Eighth Bullet Points)

became the rule, above all other policies -- written or otherwise. It is best explained by the five Department Supervisors who have have already joined this case:[36]

> My superiors knew that the job did not end for a Department Supervisor when they clocked out. When contacted off the clock, I could not ignore the calls, texts or emails because my immediate superiors, the Assistant Store Manager (there are multiple ASMs) would get on my case, write me up, refuse to promote me, or worse. It was made clear to me that part of my job was to be "flexible" a word used at Home Depot which really mean no matter the time of day or whether I was on the clock or off-the-clock, I should be prepared to work, except work, and work whenever contacted.

> Home Depot's written policy of not working off the clock is bogus. Besides being encouraged to work off the clock, and facing potential discipline for not responding when I am off the clock, and the pressure my superiors put on me to not record all the time I worked, the job of a Department Supervisor demanded I do so in order to meet the company's core goals, including superior customer service.

> Simply stated: Department Supervisors did not have a choice, they had to

work off-the-clock, and Home Depot said so.


## 8. Conclusion: Having Benefited from the "Be Flexible" Policy, Home Depot Should Now Reimburse Its Employees

The "be flexible" policy may have resulted in superior customer service or work, but it has also caused Department Supervisors between three - ten hours of unpaid off-the-clock work per week.[37]  Having benefitted from the this common

---

[36] Ex. 6 -  Plaintiff's Declarations (Seventh Bullet Point)
[37] Ex. 6 - Plaintiff's Declarations (testifying of regular overtime work per week ranging from

policy, Home Depot should pay for the benefits it received.

Other Department Supervisor, past and present, should know about this case so they benefit from the judicial economy of a collective action. But to do so they must receive accurate and timely notice so they can make informed decision about whether to participate, explained by the Supreme Court in *Hoffmann-LaRoche, Inc. v. Sperling*.[38]

Accordingly, this Court should order notice be sent out to a class of past and present, hourly paid, Department Supervisors who worked for Home Depot in the last three years.

The notice should be in the form set out in Exhibit 4. The "Class" is defined as:

> All employees (past or present) who were at anytime a Home Depot Department Supervisor from December 1, 2011 until end of this case and who worked at least one workweek and did not get paid all the overtime hours they worked.

This notice informs class members in neutral language of the nature of the action, of their right to participate in it by filing a consent to sue form with the Court, and the consequences of their joining or not joining the action. It is consistent with forms of notice that have been approved in this circuit.

---

three to ten hours).
[38] 493 U.S. 165 (1989)

## 9. Prayer for Relief

For the foregoing reasons, this Court should grant Plaintiff's motion, and conditionally certify this case as a collective action under Sec. 216(b) of the Fair Labor Standards Act, and order the following:

1. Provide Defendant 15 days to turn over all of the contact information in their files for all those that fit the Class definition, including emails, phone numbers, mailing and residential address;

2. Permit Plaintiff's counsel to contact and send notice out to the Class and provide the potential class members at least 60 days from that date they receive Notice to opt-in to this case;

3. Order that the parties shall conduct mediation within (90) days of this Order, that Plaintiff, Daniel Stone, is hereby appointed as the Class Representative to facilitate the negotiations at the scheduled mediation(s) before Mediator, James Brown, and that he has the authority to enter into a proposed settlement agreement for all class claims that are the subject of this lawsuit on behalf of all plaintiffs who choose to opt-in this action (with any class settlement subject to the Court's approval).[39]

---

[39] *See*, *Espanol v. Avis Budget Car Rental, LLC*, 2011 U.S. Dist. LEXIS 120485 at *8 (M.D. Fla.

For the Plaintiff and Class:

/s/Dale James Morgado, Esq.          /s/R. Edward Rosenberg, Esq.

MORGADO, P.A.                        MORGADO, P.A.
228 Park Ave S.                      100 N. Biscayne Blvd.,
Suite 84164                          Suite 2902
New York, New York 10003             Miami, Florida 33132
T: 855-899-9121                      T: 855-899-9121
F: 855-499-9191                      F: 855-499-9191
E: djm@morgado.us                    E: rer@morgado.us

Dated: 5/28/15

---

Oct. 18, 2011)(appointing plaintiff as Class Representative for settlement purposes)

## CONFERRAL

I certify that I have conferred in good faith with the Defendant concerning this motion and the Defendant objects to the relief sought.

*/s/Dale James Morgado*
Dale James Morgado, Esq.

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I filed the foregoing with the Court using the Clerk's CM/ECF filing system, which will send a notice of filing to all parties, including counsel for Defendant.

Dated: 5/28/15

For the Plaintiffs:

*/s/Dale James Morgado*
Dale James Morgado, Esq.